UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIWAN SINGH, | No. 1:25-cv-1822 AC P |
| Petitioner, | |
| v. | ORDER |
| SERGIO ALBARRAN, et al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Currently before the court is petitioner's motion for temporary restraining order (ECF No. 2), which respondents oppose (ECF No. 10).

I.   Factual and Procedural Background

Petitioner is a citizen of India who fled the country after being persecuted by the Indian government for supporting an opposition party. ECF No. at 6; ECF No. 2-2 at 4. Exhibits submitted with the petition indicate that he entered the United States on or about April 27, 2023, at which time he was not admitted or paroled after inspection by an immigration officer. ECF No. 1-3. He was released into the United States on May 18, 2023, under 8 U.S.C. § 1182(d)(5)(A). ECF No. 1 at 6. Petitioner asserts that after his release on May 18, 2023, he has continuously resided in the United States and established deep community ties, including close relationships with his United States citizen aunt and uncle, with whom he has remained in regular

1

contact. ECF No. 2-2 at 4. He also previously worked for Legend Transportation, which has offered to reemploy him upon his release from custody. Id.

On July 8, 2025, the Department of Homeland Security (DHS) issued a new policy instructing that anyone arrested within the United States and charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) shall be considered an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) and therefore subject to mandatory detention. ECF No. 2-2 at 2. Petitioner asserts that the new interpretation is contrary to decades of agency practice that noncitizens living in the United States who may be removed are subject to 8 U.S.C. § 1226(a), which provides broad discretion for release or detention rather than mandating detention. Id.

On September 5, 2025, the Board of Immigration Appeals issued a binding decision that immigration judges have no authority to consider bond requests for any person who entered the United States without admission because they are subject to mandatory detention under § 1225(b)(2)(A). See Matter of Yajure Hurtado, 291 I. & N. Dec. 216, 225 (BIA 2025).

On December 2, 2025, United States Immigration and Customs Enforcement (ICE) arrested petitioner at the Enforcement and Removal Operations Office in Bakersfield, California. ECF No. 2-2 at 4. He has been charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection and 8 U.S.C. § 1182(a)(7)(A)(i)(I) for not being admitted or paroled. Id. at 3. After petitioner was arrested, bond was not set, and he has been denied an opportunity for custody review because the immigration judges have maintained that he is an "applicant for admission" under 8 U.S.C. § 1225(b)(2)(A) and subject to mandatory detention, making him ineligible for bond. ECF No. 1 at 6; ECF No. 2-2 at 2.

On December 11, 2025, petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his detention by the DHS. ECF No. 1. The petition asserts two claims for relief. First, petitioner asserts that his re-detention and denial of a bond hearing under § 1225(b)(2) violates the Immigration and Naturalization Act (INA) because it does not apply to individuals like him who previously entered the United States and have been residing in the country prior to re-detention. ECF No. 1 at 12-13. Instead, petitioner asserts that he is entitled to

consideration for release on bond under § 1226(a). Id. Second, petitioner argues that he has a fundamental liberty interest in remaining free from restraint and that his detention without a bond re-determination hearing to determine whether he is a security or flight risk violates his right to due process. Id. at 13. At the same time he filed his petition, petitioner also filed a motion seeking a temporary restraining order in which he requested that respondents be required to either immediately release him from custody or provide him with an individualized bond hearing before an immigration judge under § 1226(a) within seven days.[1] ECF No. 2-1; ECF No. 2-2 at 2. Respondents have opposed the motion for a temporary restraining order. ECF No. 10. Petitioner did not file a reply and his time to do so has passed.

II.     Legal Standard for a Temporary Restraining Order

The standard for issuing a temporary restraining order is essentially the same as that for issuing a preliminary injunction. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical"). To obtain either form of injunctive relief, the moving party must show: "[(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted). "Likelihood of success on the merits 'is the most important' Winter factor." Disney Enters., Inc. v. VidAngel, Inc., 869 F.3d 848, 856 (9th Cir. 2017) (quoting Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015)). However, a party seeking injunctive relief must make a showing on all four prongs of the Winter factors to obtain injunctive relief. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

////

////

---

[1] Petitioner also requested that respondents be enjoined from transferring him outside the Eastern District of California pending resolution of this case. ECF No. 2-1; ECF No. 2-2 at 3. The court will not address this request because petitioner is being granted immediate release and it need not make an order preserving its jurisdiction because habeas petitions are properly heard in the district where the petitioner was detained when the petition was filed. See Johnson v. Gill, 883 F.3d 756, 761 (9th Cir. 2018) (for § 2241 petition, "jurisdiction established at the time of filing").

3

III. <u>Discussion</u>[2]

    A. <u>Likelihood of Success on the Merits</u>

        1. <u>Violation of the INA</u>

In his first ground for relief, petitioner asserts that his detention violates the INA. The parties dispute whether petitioner is subject to § 1226(a), as petitioner claims, or § 1225(b)(2), as the respondents claim. The central question in resolving this dispute, as in an overwhelming number of other cases currently proceeding in this court, is whether petitioner is an applicant "seeking admission."

Section 1225(b)(2)(A) mandates detention "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." An "applicant for admission" is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

Section 1226, on the other hand, "provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal" and, under subsection (a), the government has broad discretion to detain or release. <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 288 (2018)). It also provides that "a detainee may request a bond hearing before an IJ at any time before a removal

---

[2] In ordering a response to the motion for temporary restraining order, respondents were directed to "substantively address whether any provision of law or fact in this case would distinguish it from this court's decision in <u>Labrador-Prato v. Noem et al.</u>, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025), and other similar cases previously decided by this court, or indicate that the matter is not substantively distinguishable." ECF No. 5. The opposition does not identify any provision of law or fact in this case that would substantively distinguish it from the decision in <u>Labrador-Prato</u>, and instead acknowledges that "the legal framework of this case largely aligns with this Court's previous holdings, including in <u>Labrador-Prato</u>," and that "[t]his matter is not substantively distinguishable from other cases, and Respondents rely upon the same legal arguments raised in other cases decided by this Court." ECF No. 10 at 1. This admission alone is sufficient to grant relief on the same grounds and based on the same reasoning articulated in <u>Labrador-Prato</u>.

4

order becomes final" and "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. at 1197 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19). "Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." Salcedo Aceros v. Kaiser, No. 25-cv-06924 EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025).

In this case, petitioner argues that he is not "seeking admission" because he previously entered and has been residing in the United States, therefore making him subject to § 1226(a), consistent with the DHS's former practice. ECF No. 2-2 at 5-15. Respondents argue that petitioner is properly detained under § 1225(b)(2) but do not offer a basis for his detention under § 1225(b)(2) other than DHS's new statutory interpretation that this provision applies broadly to all noncitizens, including petitioner, who are present in the United States and have not been admitted. ECF No. 10 at 3-11.

The legal arguments relied upon by the government have been consistently rejected by a majority of the courts across the country.

> By a recent count, the central issue in this case—the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.

Barco Mercado v. Francis, No. 25-cv-6582 LAK, 2025 WL 3295903, at *4 & App'x A (S.D.N.Y. Nov. 26, 2025) (collecting cases); Contreras-Cervantes v. Raycraft, No. 2:25-cv-13073, 2025 WL 2952796, at *8 & n.4 (E.D. Mich. Oct. 17, 2025) ("There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country, irrespective of the length of time, having been apprehended and arrested within the border of the United States. The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).") (collecting cases). "These courts examined the text, structure, agency application, and legislative history of

1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [petitioner], living in the interior of the country." Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases).

Moreover, as recognized by this court in another case, and as petitioner points out:

> [I]n Maldonado Bautista v. Santacruz, the court certified a nationwide 'bond eligible' class and issued declaratory relief for class members that the July DHS policy is an improper interpretation of the INA and that class members are entitled to the statutory protections of § 1226(a) including a bond hearing. No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025) (extending summary judgment to class); Maldonado Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025) (summary judgment).

Morales-Flores v. Lyons, No. 1:25-cv-1640 TLN EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025).

The undersigned agrees with the well-reasoned and persuasive decisions by the overwhelming majority of courts that have addressed this issue, and rejects the government's new interpretation of § 1225 as the applicable immigration detention authority for all inadmissible noncitizens. Like these courts, the undersigned finds that § 1226(a), rather than § 1225(b)(2)(A), applies to a non-citizen who is already living in the United States.

For these reasons, petitioner is likely to succeed on the merits of his claim that respondents have violated the INA and improperly subjected him to mandatory detention without a hearing.

        2.  Due Process

Petitioner also argues that his continued, indeterminate detention violates due process. ECF No. 2-2 at 16-21. Respondent argues that because petitioner is a noncitizen "seeking admission" he is subject to mandatory detention under § 1225(b)(2) and therefore not entitled to any process. ECF No. 10 at 11-13.

Petitioner argues that he has a substantial liberty interest based on his conditional release from immigration authorities in 2023, which is analogous to the liberty of a parolee as established in Morrissey v. Brewer, 408 U.S. 471, 481-82 (1972). ECF No. 2-2 at 16. Respondents do not explicitly address whether petitioner has a liberty interest but essentially argue that he has no

liberty interest because he is a noncitizen subject to removal and under § 1225(b)(2) he must be detained. ECF No. 10 at 11-13. The undersigned rejects this argument for the reasons set forth above and agrees with petitioner.

The Due Process Clause protects persons in the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001) (citations omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." Calderon v. Kaiser, No. 25-cv-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (citing Morrissey, 408 U.S. at 482). "[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest." Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019).

Though sparse, the record indicates that petitioner was released on his own recognizance provided he complied with certain conditions. See ECF No. 1-4. Moreover, petitioner asserts that during the more than two years he has remained at liberty he has established deep community ties, including close relationships with his aunt and uncle, that he has employment waiting for him upon his release. ECF No. 2-2 at 17-18. The undersigned therefore finds that petitioner has established a liberty interest in his continued release. Having determined that a liberty interest exists, the court must now examine what process is due. See Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (the court "first asks whether there exists a liberty or property interest which has been interfered with" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient").

To determine what process is due, the court considers three factors:

First, the private interest that will be affected by the official action;

7

> second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." Rodriguez Diaz, 53 F.4th at 1206.

With respect to the first factor, petitioner has a strong private interest in remaining free from detention.  As discussed above, he has been out of custody for over two years, during which he has fostered meaningful familial relationships and has employment awaiting him upon release from detention, and there is no indication that petitioner has not cooperated with immigration authorities during his release.[3]  This factor therefore weighs in petitioner's favor.

The second factor, the risk of erroneous deprivation, also weighs in petitioner's favor. Considering that petitioner has been provided no process, the risk of erroneous deprivation is high, particularly in light of the fact that respondents do not argue or present any evidence that petitioner presents a danger to the community or a flight risk.  See A.E. v. Andrews, No. 25-cv-00107 KES SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing[.]" (alterations in original) (citation and internal quotation marks omitted)); R.D.T.M. v. Wofford, No. 1:25-cv-01141 KES SKO, 2025 WL 2617255, at *6 (E.D. Cal. Sept 9, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." (alteration in original) (citations omitted)).

---

[3] Although respondent asserts that "[p]etitioner has violated conditions of release and has a pending immigration hearing," they offer no details regarding the alleged violation, including the nature of the violation or when it occurred, and do not indicate when petitioner's hearing is to take place. ECF No. 10 at 14.  Moreover, the EOIR's automated case information website indicates that petitioner has no hearings scheduled at this time.  Respondent also does not argue that any alleged violation is the basis for petitioner's current detention.  Absent evidence that petitioner is being charged with a violation of his conditions of release or that said violation is the basis for his detention, the court will not consider this argument.

Finally, while the government has an interest in enforcing its immigration laws, "its interest in detaining petitioner without a hearing is 'low' and custody hearings in immigration court "are routine and impose a 'minimal' cost." R.T.D.M., 2025 WL 2617255, at *6 (citing Ortega, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

For these reasons, the court finds that the government's interest in detaining petitioner without a hearing is low and does not outweigh petitioner's substantial liberty interest or the high risk of erroneous deprivation of liberty. Therefore, the court finds that petitioner has established a likelihood of success on the merits of his due process claim.

### B. Irreparable Harm

"[U]nlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." Hernandez v. Sessions, 872 F.3d 976, 999 (9th Cir. 2017). Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1979)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." Warsoldier v. Woodford, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting 11A Wright & Miller's Federal Practice & Procedure § 2948.1 (2d ed. 2004); Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm." (citation omitted)). This factor therefore weighs in petitioner's favor.

### C. Balance of the Equities and Public Interest

Finally, "[w]hen the government is a party, the last two factors (equities and public interest) merge." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 668 (9th Cir. 2021) (citing Nken v. Holder, 556 U.S. 418, 435 (2009)). As addressed above, petitioner is likely to success in proving that respondents have violated federal laws and deprived him of his constitutional rights. "[The government] cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013); Zepeda v. U.S. Immigr. & Naturalization Serv., 753 F.2d 719, 727 (9th Cir. 1983) ("[T]he INS cannot reasonably assert that it is harmed in any legally cognizable

sense by being enjoined from constitutional violations.").

      D.    Bond

      Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." However, "[d]espite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original) (some internal quotation marks omitted) (quoting Jorgensen v. Cassiday, 320 F.3d 909, 919 (9th Cir. 2003)). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." Jorgensen, 320 F.3d at 919 (citing Barahona-Gomez v. Reno, 167 F.3d 1228, 1237 (9th Cir. 1999)).

      Neither party has addressed the issue of security in this case and the court finds no security required here as courts regularly waive security in cases like this one. See, e.g., Zakzouk v. Becerra, No. 25-cv-6254 KAW, 2025 WL 2899220, at *8 (N.D. Cal. Oct. 10, 2025) (collecting cases).

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion for temporary restraining order (ECF No. 2) is GRANTED.

2. Respondents must IMMEDIATELY RELEASE petitioner Jiwan Singh from custody under the same conditions of release to which he was subject prior to his December 2, 2025, detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

3. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to 8 U.S.C. § 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered. At any such hearing, petitioner shall be allowed to have his counsel present.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.

5. Respondents are ORDERED TO SHOW CAUSE by no later than December 24, 2025, as to why this court should not issue a preliminary injunction on the same terms as this order. Petitioner may file a response thereto by no later than December 29, 2025. If the parties agree upon a less demanding briefing schedule, the court will consider the parties' proposal.

DATED: December 19, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE